# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES HANDCOCK,           :

     Petitioner,          :     Case No. 3:12cv00096

  vs.                   :     District Judge Thomas M. Rose
                             Chief Magistrate Judge Sharon L. Ovington

WARDEN, Chillicothe     :
Correctional Institution,

                        :

     Respondent.

                        :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    <u>Introduction</u>

A jury in state court found James Handcock guilty of committing several crimes including felonious assault for firing a gun at Thomas Benner.  Fortunately, neither Benner nor anyone else was physically injured in the incident.  Handcock is presently in state custody serving multiple consecutive sentences totaling 17½ years.

Handcock brings the present case *pro se* seeking a writ of habeas corpus. The case is before the Court upon Handcock's Petition (Doc. #2), Respondent's Return of Writ and attached Exhibits (Doc. #5), Handcock's Traverse (Doc. #7), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II.    <u>Factual Background</u>

Handcock testified during his trial about the events on the day of the shooting, but the jury did not credit the key points of his testimony.  He testified that on the day of the incident, he was driving around and stopped at a gas station to put air in his tires.  He soon discovered that his car would not shift into drive and that he was stuck at the gas station.  This made him angry and "very upset."  (Doc. #5, Exhibit 30, PageID at 386).  He decided to get money from an ATM and then call a tow truck, but he could not get the ATM to work.  At this point he became "basically irate" and went to his car, retrieved a gun, and put it in a holster.  *Id*., PageID at 387.

He further testified, "All I remember is being by my car in between ... the driver's door and the front of the car just aiming in the air and just shooting."  *Id*., PageId at 388.  According the Handcock, he fired the gun into the air twice.  *Id*., PageID at 397.  He explained that he did not point the gun at Benner or try to shoot Benner or any of the people in the car with Benner.  He also testified that he did not try to shoot the car, and "[t]hat couldn't have been feasibly possible for me to be aiming at the car and not hit it...."  *Id*., PageId at 388.  The car Benner was sitting in was less than fifteen feet from Handcock when he shot at it.  (Doc. #5, Exh. 9, PageID at 110).  Handcock did not know any of the people in the car.  (Doc. #5, Exh. 30, PageID at 390-91).

Handcock acknowledged to the jury that shooting the gun into the air was bizarre.  He then testified, "When I look back, the whole morning was bizarre.  I should have just stayed

in bed, but you know, I'm not taking my meds and basically it's what's known as a nervous breakdown."  (Doc. #5, Exh. 30, PageID at 389).  When asked – "Why in the world are you shooting a gun?  Why?  What's going on in your mind?" – Handcock explained that he was "upset, irate, [had] irrational thinking and stuff like that going on."  *Id*., PageID at 388.

The prosecution's evidence consisted, in part, of testimony by Benner and two other occupants of the car Benner was in.  On Handcock's direct appeal, the Ohio Court of Appeals described their testimony as follows:

> At trial, Thomas Benner testified that the three men [Benner, another passenger, and the driver] stopped at the gas station for coffee and gas.  Benner went into the store, where he saw Handcock standing near the ATM.  Benner stated that Handcock lifted his shirt and showed Benner a handgun.  Benner then walked out of the store and went to Camp's [the driver's] car.  After Camp paid for gas, they started to leave and Benner stared and Handcock, who was sitting near his disabled vehicle.  According to Benner, Handcock responded by yelling, "What, motherf__ker!" and drawing the pistol.  Benner testified, "He started coming at me with the gun, holding it sideways and shooting at me."  In response to the question, "You are certain he was shooting at you?", Benner answered, "Yeah."  When subsequently asked if he saw Handcock pointing the gun at him, Benner indicated, "Yes."  He also testified, "and he wasn't shooting at no air either."
>
> Robert Camp, the driver of the car testified he saw Handcock in the rearview mirror as they were attempting to get away from him.  In response to an inquiry about whether he saw Handcock point the gun at the car, Camp responded, "Yeah(.)".
>
> The third passenger, Robert Dawes, did not see any of the shooting because he was lying down on the front set after the incident started.

(Doc. #5, Exh. 9, PageID at 109-10).

The jury acquitted Handcock of the charges of felonious-assault on Camp and

Dawes.  But, as indicated previously, the jury found Handcock guilty of felonious assault on Benner.  The jury also found Handcock guilty of carrying a concealed weapon and having weapons while under a disability.  *Id*., Exhs. 4, 5.  These convictions led to Handcock's multiple consecutive sentences and his present incarceration.

### III.    Handcock's Present Claims

In his habeas corpus Petition, Handcock's first ground for relief asserts an insufficient-evidence claim: "The Verdict of Guilty in Count 2 Felonious Assault [upon Benner] Is Contrary to Law When the Evidence Is Insufficient in Violation of [Handcock's] Fifth and Fourteenth Amendment Rights to the United States Constitution."  (Doc. #2, PageID at 36, 47).

Ground two of Handcock's habeas petition concerns Ohio's former statutory requirement that sentencing judges find certain additional facts before imposing consecutive sentence upon a convicted defendant.  He contends: "The Trial Court Erred in Denying [his] Motion to Vacate Void Sentence When the Sentence Imposed Does Not Comport with the General Assembly's Requirement [for imposing consecutive sentences] Set Forth in Ohio Rev. Code [§] 2929.14(E)(4) in Violation of the Fifth and Fourteenth Amendment[s]."  (Doc. #2, PageID at 38, 47).

In his third ground for relief, Handcock challenges his indictment as defective due to the absence of the required mental state in Count IV.  He argues, "The Trial Court Erred in Denying [his] Motion to Vacate Void Sentence When the Trial Court Failed to Enforce [Sic]

4

the State to Comport with the General Assembly's [mental-state] Requirement Set Forth in Ohio Revised Code [§] 2901.21(B) in Violation of the Fifth and Fourteenth Amendments of the United States Constitution." (Doc. #2, PageID at 39-40, 47).

## IV.    Ground One:  Insufficient Evidence

### A.    Procedural Default

Respondent contends that Handcock has waived federal habeas review of his first ground for relief by committing a procedural default.  The default occurred, according to Respondent, when Hancock failed to raise his insufficient-evidence claim on direct appeal to the Ohio Supreme Court.

To obtain federal habeas review, a habeas petitioner must first raise his federal constitutional claims in state court by following the state's adequate and independent procedural rules.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F. 3d 155, 160 (6th Cir. 1994).  If the petitioner fails to follow the state's adequate and independent procedural rules, and if the state courts enforced those rules against him, then his procedural misstep – "procedural default" in habeas lexicon – might result in a waiver of one or more of his claims for the purpose of federal habeas review.[2]  *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

---

[2] A four-factor test is applied to determine whether a procedural default committed by Bowshier, an inmate in Ohio's custody, bars federal habeas review of his claims:

      1.     Whether there is a firmly established Ohio procedural rule with which he failed

In addition, petitioners must to give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732 (1999).

Handcock raised his federal claim of insufficient evidence in the Ohio Court of Appeals on his direct appeal. *See* Doc. #5, Exh. 7. The Ohio Court of Appeals found the claim meritless in its decision in August 2009; its final judgment entry was filed on August 21, 2009. *Id.*, Exhs. 9, 10. Handcock then had 45 days to file an appeal in the Ohio Supreme Court. *See Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 431-32 (6th Cir. 2006) (citing Ohio S.Ct. Prac. Rule II, §2(A)(4)(a)[3]); *see also Baker v. Bradshaw*, 495 Fed. App'x 560, 564 (6th Cir. 2012). He did not do so. Due to this omission and because the deadline for pursuing direct appeal in the Ohio Supreme Court has long since passed, his insufficient-evidence claim is procedurally defaulted. *See Boerckel*, 526 U.S. at

---

       to comply;

2.     Whether the Ohio court actually enforced the rule against him;

3.     Whether his failure to comply with the Ohio procedural rule constitutes an adequate and independent state ground for barring federal habeas review; and

4.     Whether both "cause" and "actual prejudice" exist to excuse the failure to follow Ohio's procedural rules or whether the absence of federal habeas review will result in a miscarriage of justice.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001)(and cases cited therein). It is well-settled that res judicata in Ohio meets the pertinent parts of the *Maupin* test. *See Williams*, 380 F.3d at 966-67; *see Jacobs*, 265 F.3d at 417.

[3] The 45-day time limit for pursuing direct appeal in the Ohio Supreme Court currently appears in Ohio S.Ct. Prac. Rule 7.01(A)(1) (amended Jan. 1, 2013).

845, 848, 119 S.Ct. at 1732, 1734; *see also Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 431-32 (6th Cir. 2006). This is so even though in early December 2009, Handcock filed a Motion for Leave to File Delayed Appeal because the Ohio Supreme Court denied his Motion. *See Smith*, 463 F.3d at 431-32; *see also* Doc. #5, Exhs. 11-13.

To overcome his procedural default, Handcock must demonstrate "cause" for his procedural misstep and prejudice resulting from it. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591 (2000); *see also Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) (and cases cited therein). Demonstrating "cause" requires showing that an objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986).

Handcock presents a possible basis for showing cause in his Motion for Leave to File Delayed Appeal in the Ohio Supreme Court. He argued there that his failure to file a timely direct appeal in the Ohio Supreme Court was caused by his appellate counsel's ineffective assistance in violation of the Fifth and Fourteenth Amendments to the Constitution. (Doc. #5, Exh. 11). He alleged that the ineffective assistance stemmed from his appellate counsel's failure to relay vital information to him about his right and obligation to bring a perfected appeal in the Ohio Supreme Court. *Id.*, PageID at 120. The Ohio Supreme Court denied Handcock's Motion. *Id.*, Exh. 13.

"Ineffective assistance of appellate counsel, if it rises to the level of a constitutional

7

violation, can serve as cause to excuse the procedural default of claims brought in a habeas corpus proceeding." *Burton*, 391 F.3d at 773; *see Edwards*, 529 U.S. at 451, 120 S.Ct. at 1591. But to serve as cause, the habeas petitioner must properly present the state courts with the claim under the state's procedural rules. *See Edwards*, 529 U.S. at 453, 120 S.Ct. at 1592. A procedurally defaulted ineffective assistance of counsel claim cannot serve as cause for a procedural default. *Id*.

The proper method in Ohio to raise a claim of ineffective assistance of appellate counsel is to file an Application for Reopening Appeal under Ohio R. App. P. 26(B). The record contains no indication that Handcock filed a Rule 26(B) Application in the Ohio Court of Appeals. He therefore committed a procedural default in the Ohio courts as to his claim of ineffective assistance of appellate counsel and, in turn, the claim cannot serve as cause to excuse his procedural default. *See Edwards*, 529 U.S. at 453, 120 S.Ct. at 1592.

Handcock might still avoid the negative impact of his procedural default by showing that "a fundamental miscarriage of justice" will occur absent federal habeas review of his insufficient-evidence claim. *See Edwards,* 529 U.S. at 451. A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2649; *see also Schlup v. Delo*, 513 U.S. 298, 326-27, 115 S.Ct. 851, 867 (1995). Neither Hancock's habeas petition, his traverse, nor the information contained in the record reflects that a miscarriage of justice will occur absent federal habeas relief. This is

8

especially so because the evidence was sufficient to support his felonious-assault conviction. *See infra*, §IV(B)-(C); *see Schlup*, 513 U.S. at 326-27, 115 S.Ct. at 867 (to establish the miscarriage-of-justice exception to procedural default, petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." (citation omitted)).

Accordingly, Hancock's procedural default bars federal habeas review of his first ground for relief.

**B.     The AEDPA and *Jackson v. Virginia***

Respondent alternatively contends that Handcock's claim of insufficient evidence lacks merit and provides no basis for relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[4]

Handcock maintains that his claim of insufficient evidence is well taken because the prosecution failed to present the jury with evidence that he shot at the car.  He contends, "All the evidence points to the gun being **shot in the Air** the essential elements of the crime were not proven beyond a reasonable doubt."  (Doc. #7, PageID at 483) (emphasis in original).

Under the AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

---

[4] Codified, in part, in 28 U.S.C. §2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

9

Court of the United States. 28 U .S.C. §2254(d)(1)." *Greene v. Fisher,* __U.S.__, 132 S.Ct. 38, 42 (2011). The [AEDPA's] "contrary to" clause is satisfied "if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." *Villagarcia v. Warden,* 599 F.3d 529, 533 (6th Cir. 2010) (brackets in *Villagarcia* ) (quoting, in part, *Williams,* 529 U .S. at 413). "Under [the AEDPA's] 'unreasonable application' clause ..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Villagarcia,* 599 F.3d at 533 (quoting *Williams,* 529 U.S. at 411); *see Harrington v. Richter,* 562 U.S. __, 131 S.Ct. 770, 785 (2011). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *McKinney v. Ludwick,* 649 F.3d 484, 488 (6th Cir. 2011) (quoting in part *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357 (2002)) (other citations omitted).

Turning to federal claims of insufficient evidence, the Due Process Clause of the Fourteenth Amendment protects a state criminal defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *see Fiore v. White*, 531 U.S. 225, 228-29 (2001). Under *Jackson*, the court must determine

if, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found, beyond a reasonable doubt, each essential element of the crime.

*Jackson*, 443 U.S. at 319, 324, 99 S.Ct. at 2789, 2791-92.

Considering both his insufficient-evidence claim and the AEDPA, Handcock faces

two levels of deferential review:  first, he must show that the evidence was insufficient to

support his conviction under the standards set by *Jackson*; second, he must demonstrate that

the Ohio Court of Appeals' decision was contrary to *Jackson* or involved an unreasonable

application of the standards established by *Jackson*.  *See* 28 U.S.C. §2254(d)(1); *see also*

*Cavazos v. Smith*, __U.S.__, 132 S. Ct. 2, 3-4 (2011); *Davis v. Lafler*, 658 F.3d 525, 531 (6th

Cir. 2011).

## C.    Analysis

On Handcock's direct appeal, the Ohio Court of Appeals quoted the pertinent part of

Ohio's felonious assault statute, Ohio Rev. Code §2093.11, as follows:

"(A)   No person shall knowingly do either of the following:

* * *

"(2)   Cause or attempt to cause physical harm to another *** by means of a deadly
          weapon ***(.)"

(Doc. #5, Exh. 9, PageID at 112).  The Ohio Court of Appeals then addressed Handcock's

claim:

Handcock asserts that the State failed to prove he knowingly attempted
to cause physical harm to Benner by firing the gun.  He submits he had no
intention to harm anyone, because he fired the gun "into the air, not in the

11

direction of the three men." As proof of that assertion he points to several pieces of evidence.

First, he relies on his own testimony that he fired into the air rather than at the car. He notes no bullets struck the car even though he fired at a short distance from the car. He also emphasizes that all the occupants either ducked down behind their seats and could not see him fire, or in the case of the driver, he was hastily driving the car out of the gas station and couldn't see what was happening behind him.

Although there is a limited amount of logic behind these arguments, they overlook several very important legal rules and the State's competing evidence. First, because the State successfully presented a prima facie case, the court properly allowed the jury to decide Handcock's case. Both Benner and Camp testified Handcock pointed the gun at them and/or the car. Thus, a reasonable juror could infer that Handcock intended to cause physical harm to Benner. And, the jury was free to believe all, part or none of Handcock's testimony. As long as the State presented substantial competing evidence, it was the jury's role to choose which version of the events to believe. So, in spite of some of the inconsistencies and weaknesses in the State's case, we conclude there is no manifest miscarriage of justice here....

(Doc. #5, Exh. 9, PageID at 112-14).

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found Handcock guilty beyond a reasonable doubt of felonious assault upon Benner. Indeed, if fully credited, Benner's testimony alone suffices to establish Handcock's guilt under *Jackson*. Benner testified that after he got back into the car, he looked over and saw Handcock. Benner explained:

He's sitting over by the car, and I looked at him and then I heard him say, "What?" and [sic] started firing the gun. He started coming at me with the gun, holding it sideways and shooting at me.

(Doc. #5, Exh. 30, PageID at 298). When asked if he was certain that Handcock was

12

shooting at him, Benner answered, "Yeah."  *Id*.  Viewing this testimony in the prosecution's

favor, as *Jackson* mandates, 443 U.S. at 319, 99 S.Ct. at 2789, a rational jury could conclude

– based on Benner's testimony – that Handcock knowingly fired a gun at Benner, and thus,

knowingly "attempt[ed] to cause physical harm to another ... by means of a deadly weapon"

in violation of Ohio Rev. Code §2093.11(A)(2).

Handcock seeks to avoid this conclusion by arguing that Benner testified "that he

ducked down (Tr. 84 line 8) when he heard 3 to 4 shots (Tr. 84 line 15)."  (Doc. #7, PageID

at 482) (internal citations in original).  This part of Benner's testimony occurred as follows:

> Q.      You're looking at him and —
>
> A. [Benner]   Because he's shooting at me.  I'm ducking behind the back
>                 windshield because he was shooting at me.
>
> Q.      I'm sorry.  What?
>
> A. [Benner]   Because he's shooting at me.  I'm ducking behind the back windshield
>                 and stuff because he come running with the gun like a blaze of glory
>                 shooting at somebody.

(Doc. #5, Exh. 30, PageID at 299).  Handcock views this testimony in his own favor and

overlooks that Benner repeatedly testified here (and elsewhere) that Handcock was shooting

at him.  *Id*., PageID at 298-99.  Based on this testimony, a rational jury could conclude that

Benner ducked down behind the back windshield because he saw Handcock shooting at him.

Although Benner also said that Handcock was "shooting at somebody," *id*., this does not

eliminate Benner's previous repeated testimony that he saw Handcock shooting at him.

Similarly, the other evidence Handcock relies on – his own testimony that he fired the gun

into the air, not at the car, and evidence establishing that no damage or bullet holes were found in the car – this evidence does not help Handcock under the deference due the jury's verdict pursuant to *Jackson*.  This is so not only in light of Benner's testimony but also because the driver testified that Handcock shot at the car – a fact, when accepted as true, confirms he did not fire into the air.  (Doc. #30, PageID at 316, 318).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Cavazos*, __ U.S. at __, 132 S. Ct. at 6 (quoting, in part, *Jackson*, 443 U.S. at  326, 99 S.Ct. at 2793).  Because Benner repeatedly testified that he saw Handcock shoot a gun at him and because the driver testified that he saw Hancock shoot at the car, the Court must presume that the jury resolved any conflicting inference raised by Handcock's testimony in the prosecution's favor.  *See id*.  Presuming this, and deferring to it, the evidence was sufficient to support a rational jury's conclusion beyond a reasonable doubt that Handcock knowingly committed felonious assault on Brenner.  *See id*.  And, for these reasons, AEDPA deference is also applies to the Ohio Court of Appeals' decision because it was neither contrary to, nor involved an unreasonable application of the clearly established federal law determined by the Supreme Court in *Jackson* and its progeny.  *See Cavazos*, __ U.S. at __, 132 S.Ct. at 3-4, 6; *see also Coleman v. Johnson*, __ U.S.__, 132 S. Ct. 2060, 2064-65 (2012) (Per Curiam); *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

14

Accordingly, Handcock is not entitled to a writ of habeas corpus on his first ground for relief.

## V.    Ground Two:  Consecutive Sentences

### A.    Background

Handcock was sentenced to serve consecutive terms of imprisonment consisting of eight years for felonious assault plus three years for a firearm specification; five years for having weapons under a disability; and 18 months for carrying a concealed weapon.  (Doc. #5, Exh. 5).  When imposing Handcock's sentences consecutively, the judge did not make additional findings of fact in support of his decision to impose consecutive sentences.  *Id*.

Five months later, the Supreme Court held in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009) that the Sixth Amendment, as construed in *Apprendi* and *Blakely*,[5] did not preclude Oregon's decision to limit the "unfettered discretion" granted judges under common law to impose consecutive sentences.  555 U.S. at 163-64, 129 S.Ct. at 714-15. Oregon's limited discretion permitted consecutive sentences only when the judge found that certain predicate facts supported sentencing the convicted defendant to consecutive terms of imprisonment.[6]  555 U.S. at 164-72, 129 S.Ct. at 714-19.

---

[5] *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[6] An example of one such predicate fact, Oregon law permits an Oregon judge to order consecutive sentences "'[i]f a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct.'"  *Oregon v. Ice*, 555 U.S. at 165, 129 S. Ct. at 715 (quoting Ore.Rev.Stat. §137.123(2)).

15

In the Ohio courts, Handcock unsuccessfully contended that *Oregon v. Ice* invalidated his consecutive sentences because the trial judge did not make additional findings of fact mandated by Ohio Rev. Code §2929.14(E) – a statute similar to the one the Supreme Court approved in *Oregon v. Ice. See* Doc. #5, Exhs. 14, 15, 20, 24. Handcock now asserts in his second ground for relief that the trial court's decision to sentence him to consecutive terms of imprisonment without making the additional findings required by Ohio Rev. Code §2929.14(E) violates the Fifth and Fourteenth Amendments to the Constitution.

There was a time in Ohio that its sentencing statutes – specifically §2929.14(E) – permitted judges to impose consecutive sentences only after finding certain predicate facts. Those predicate facts included, in part, that a consecutive sentence was "'necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.'..." *State v. Foster*, 109 Ohio St. 3d 1, 21 (2006) (quoting former Ohio Rev. Code §2929.14(E)).[7]

In February 2006 – more than two years before Handcock was sentenced – the Ohio Supreme Court found Ohio Rev. Code §2929.14(E) unconstitutional under the principles announced in *Blakely*, 542 U.S. 296, 124 S.Ct. 2531 because it mandated judicial factfinding

---

[7] "In addition, at least one of three more findings of fact must be found: that the offender was already under control of the court due to an earlier conviction, that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct, or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public." *Foster*, 109 Ohio St.3d at 21 (citing and quoting, in part, former Ohio Rev. Code §2929.14(E)(4)(a), (b)) (footnotes omitted).

in support of consecutive sentences.  *Foster*, 109 Ohio St.3d at 21-22, 845 N.E.2d at 490-91.

To remedy this constitutional problem, the Ohio Supreme Court severed Ohio Rev. Code

§2929.14(E) from Ohio's sentencing statutes.  *Foster*, 109 Ohio St.3d at 21-22, 845 N.E.2d at

490-91.  The Ohio Supreme Court explained: "After the severance, judicial fact-finding is not

required before imposition of consecutive prison terms."  *Id.*, 109 Ohio St.3d at 29, 845

N.E.2d at 498.  Consequently, on the date Handcock was sentenced (September 3, 2008), the

previously severed Ohio Rev. Code §2929.14(E)(4) had no effect and did not require the

sentencing judge to find additional statutory facts in order to impose consecutive sentences.

*See Foster*, 109 Ohio St. 3d at 29, 845 N.E.2d at 498.  Doubtlessly knowing this, the trial

judge did not find additional facts in support of his decision to sentence Handcock to

consecutive terms of imprisonment.

Handcock challenged his consecutive sentences in his *pro se* Motion to Vacate Void

Sentence filed in the trial court under *Oregon v. Ice* , 555 U.S. 160, 129 S.Ct. 711, which he

believed rejected *Foster*'s Sixth-Amendment rationale for severing the additional fact-finding

requirement set forth in (former) Ohio Rev. Code §2929.14(E).  He reasoned, for example,

"because the consecutive sentence findings in R.C. §2929.14(E) have never been excised

from the [Ohio Revised] Code, the limited nullification of *Foster* by [*Oregon v.*] *Ice* brings

those provisions back into full effect."  (Doc. #5, Exh. 14, PageID at 143).

The Ohio Court of Appeals rejected Handcock's claim as follows:

> The findings requirement for imposing consecutive sentences in R.C.
> 2929.14(E)(4) was severed from the section by ... *Foster*, 109 Ohio St.3d 1 ....

> Handcock argues that *Foster's* holding in that respect was overruled by *Oregon v. Ice* (2009), 555 U.S. 160 ..., and that as a result the findings requirements of R.C. 2929.14(E) have been revived.  Handcock's argument was most recently rejected by the Ohio Supreme Court in *State v. Hodge*, 128 Ohio S.Ct.3d 1 ....

(Doc. #5, Exh. 20, PageID at 184-85).

In *State v. Hodge*, the Ohio Supreme Court held that "the decision of the United States Supreme Court in *Oregon v. Ice* does not revive Ohio's former consecutive-sentencing provisions, R.C. 2929.14(E)..., which were held unconstitutional in *State v. Foster*.  Because the statutory provisions are not revived, trial judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made."  *Hodge*, 128 Ohio St.3d at 11.

### B.    <u>Analysis</u>

Handcock's reliance on *Oregon v. Ice* does not show his consecutive sentences violate his constitutional rights or that he is entitled to federal habeas relief.  Although the Supreme Court in *Oregon v. Ice* allowed Oregon and other states to require additional judicial factfinding before imposing consecutive sentences, it did not require states (or Ohio specifically) to allow the imposition of consecutive sentences only when the sentencing judge finds additional predicate facts.  Oregon and other states remained free, after *Oregon v. Ice*, to choose – or not choose – to impose consecutive sentences only after finding certain predicate facts.  Neither sentencing choice runs afoul of *Blakely* or the Sixth and Fourteenth Amendments.  Instead, *Oregon v. Ice* recognized the continuing constitutional validity of each choice.  The Supreme Court explained:

18

> Most States continue the common-law tradition: They entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently.  In some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor.

*Oregon v. Ice*, 555 U.S. at 163-64, 129 S. Ct. at 714.  *Oregon v. Ice* did not invalidate the common-law tradition of extending "unfettered discretion" to judges in states that allow judges to impose multiple consecutive sentences without additional predicate factfinding.  As a result, the imposition of consecutive sentences upon Handcock without judicial predicate factfinding does not conflict with *Oregon v. Ice* or the Constitution.  *See id.*, 555 U.S. at 164-72, 129 S.Ct. at 714-19.

*Foster* gives only temporary pause.  As discussed above, *Foster* severed Ohio Rev. Code §2929.14(E) based on the principles enunciated in *Blakely*.  *See Foster*, 109 Ohio St. 3d at 20-22.  As it turned out, the Ohio Supreme Court's reasoning in *Foster* conflicted with *Oregon v. Ice*.  *See Hodge*, 128 Oh St.3d at 5 ("We recognize ... that the decision in *Ice* undermines some of our reasoning in the *Foster* decision that judicial fact-finding in the imposition of consecutive sentences violates that Sixth Amendment.").  But this does not help Handcock.  Again, *Oregon v. Ice* simply approved of state statutes like the pre-*Foster* version of Ohio Rev. Code §2929.14(E); *Oregon v. Ice* did not require Ohio (or states with similar sentencing statutes) to reinstate §2929.14(E) to its pre-*Foster* effectiveness either automatically or by new legislation.  Handcock is therefore incorrect in arguing that §2929.14(E) was never invalidated.  *Foster* invalidated it.  It was then up to the Ohio

19

legislature to reinstate §2929.14(E), if it wanted to limit Ohio judges' unfettered discretion under common law to allow consecutive sentences only when a judge finds certain predicate facts.  Did the Ohio legislature do so?  This question concerns a matter of state-sentencing law that is not cognizable in federal habeas corpus.  *See Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875 (1984) ("[a] federal court may not issue the writ on the basis of a perceived error of state law."); *see Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998) (violation of state law is not cognizable in federal habeas corpus proceeding); *see also McClure v. Warden, Warren Corr. Inst.*, 1:08-CV-00144, 2009 WL 536105 at *5 (S.D. Ohio Mar. 3, 2009) (Spiegel, D.J.; Black, M.J.) ("to the extent petitioner contends he is entitled to federal habeas relief because the trial court committed errors under Ohio law in imposing the consecutive prison terms, his claims for relief are not cognizable.").

Handcock, moreover, has not pointed to a U.S. Supreme Court case requiring the Ohio legislature to reenact Ohio Rev. Code §2929.14(E) – *Oregon v. Ice* certainly does not do so because it is permissive, not mandatory.  Again, it allows, but does not mandate, states to limit judges' discretion to impose consecutive sentences only when a judge finds certain predicate facts.  *Oregon v. Ice*, 555 U.S. at 164-72, 129 S.Ct. at 714-19.  And, contrary to Handcock's contention, Ohio law did not somehow operate to automatically reinstate §2929.14(E) when the Supreme Court disagreed, in *Oregon v. Ice*, with the consecutive-sentence reasoning in *Foster.  See Hodge*, 128 St.3d at 6-11 ("We ... note that none of our precedents have suggested to the [Ohio] General Assembly that a statute that has been held

20

unconstitutional by this court and that has never been repealed by that body may be automatically and suddenly revived through a later court decision.").

Lastly, Handcock has not pointed to a U.S. Supreme Court case in effect when he was sentenced in 2008, or after *Oregon v. Ice*, that clearly established his constitutional proposition – *i.e.*, that Ohio is constitutionally obligated to reinstate its pre-*Foster* version of Ohio Rev. §2929.14(E) and thereby invalidate Handcock's sentence by requiring the imposition of consecutive sentences only when the sentencing judge finds certain predicate facts.  For this reason, and the reasons set forth above, Handcock has not shown that the Ohio Court of Appeals' rejection his challenge to his consecutive sentences was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Accordingly, Handcock's third ground for relief provides no basis for relief under the AEDPA.

## VI.    Ground Three:  Allegedly Defective Indictment

In his third ground for relief, Handcock argues that the trial court failed to comply with the requirements in Ohio Rev. Code §2901.21(B) and thus deprived him of his rights under the Fifth and Fourteenth Amendments to the Constitution.

Ohio Rev. Code §2901.21(B) provides:

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense.  When the section neither specifies culpability nor

21

plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

Ohio Rev. Code Ann. §2901.21(B).

In his Motion to Vacate Void Sentence filed in state court, Handcock argued that Count Four of the indictment – which charged him with discharging a firearm "upon or over a public road or highway win [sic] violation of Ohio Revised Code Section 2923.162(A)(3),"[8] – failed to include the mental state of recklessness as §2901.21(B) required.  He therefore concluded that Count Four of his indictment was defective, rendering his entire indictment defective.  (Doc. #5, Exh. 19, PageID at 179).  The Ohio Court of Appeals rejected this claim for two reasons:

> Initially, we note that Count IV of Handcock's indictment was dismissed during trial before the case was submitted to the jury, thus, he was not convicted of discharging a firearm on or near prohibited premises.  Therefore, any alleged defect in the indictment regarding Count IV had no effect on the sentence that was ultimately imposed and does not render Handcock's sentence void.

> In his reply brief, Handcock argues that the omission of a material element of a count in an indictment renders the entire indictment void.  In support of his assertion, Handcock cites two cases, *Harris v. State* (1932), 125 Ohio St. 257, and *State v. Keplinger,* Madison App. No. CA2002–07–013, 2003–Ohio–3447.  Upon review, we find that neither *Harris* nor *Keplinger* require an indictment containing multiple counts to be dismissed in its entirety if only one of the counts is later found to be defective.  In fact, in *Keplinger,* the court affirmatively stated that its reversal of one count of aggravated drug trafficking did not affect the defendant's convictions for the remaining counts in the indictment.  As in the instant case, the dismissal or reversal of one count in a multiple count indictment did not render the entire indictment void. Thus, we find that the trial court did not err when it overruled Handcock's motion to

---

[8] (Doc. #5, Exh. 1, PageID at 73).

vacate his sentence in this respect.

(Doc. #5. Exh. 20, PageID at 185-86).

To the extent Handcock again seeks to challenge his indictment as defective under Ohio law, his claim is not cognizable in this federal habeas corpus case.  *Jackson v. Bradshaw*, 681 F.3d 753, 780 (6th Cir. 2012) (citing *Pulley,* 465 U.S. 37, 41, 104 S.Ct. 871 (1984)).  But, Handcock's habeas petition also asserts that the trial court's violation of Ohio Rev. Code §2901.21(B) likewise violated his rights under the Fifth and Fourteenth Amendments.

Respondent correctly points out that Handcock did not fairly present his challenge to the indictment to the Ohio courts as a federal constitutional claim.  This constitutes a procedural default.  "The federal court will not review claims that were not entertained by the state court ... due to the petitioner's failure to raise those claims in the state courts while state remedies were available ...."  *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 430-31 (6th Cir. 2006); *see Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006); *see also Maupin, supra*, n.2.  Handcock has not provided a basis for concluding that cause exists to excuse his procedural default.  And he cannot demonstrate prejudice from this procedural default because the allegedly defective count of the indictment was dismissed before the jury could consider it.  Furthermore, because the trial court dismissed Count IV before jury deliberations, and because the evidence was sufficient to convict Handcock of felonious assault, *supra*, §IV, he has not shown that a miscarriage of justice will occur absent

23

federal judicial consideration of his challenge to the indictment.

Lastly, Handcock has not pointed to clearly established federal law as determined by the Supreme Court that supports his contention that a multi-count indictment with a single defective count is void in its entirety under the Fifth and Fourteenth Amendments. He instead relies on two inapplicable state cases. The first state case did not involve a federal constitutional claim, *see Harris*, 125 Ohio St. 257; the second state case did not void an entire multi-count indictment on federal constitutional grounds when one count was defective, *see Keplinger*, 2003 WL 21497117. Handcock has therefore failed to demonstrate that the Ohio Court of Appeals' rejection of his challenge to the indictment was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. He is not, therefore, entitled to federal habeas relief under the AEDPA. *See* 28 U.S.C. §2254(d)(1); *see also Greene*, ___U.S. at ___, 132 S.Ct. at 42 (describing AEDPA standards).

## VII.  <u>Certificate of Appealability</u>

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1603 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484, 120 S.Ct. at

1603.  If the District Court dismisses the petition on procedural grounds without reaching the

merits of the constitutional claims, the petitioner must show that jurists of reason would find

it debatable whether the District Court is correct in its procedural ruling.  *Id*.

The conclusions reached in the instant Report are not debatable by jurists of reason and

the case does not otherwise present issues sufficient to encourage Hancock to proceed further.

Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1. James Handcock's Petition for Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED;

2. Petitioner be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

3. This case be terminated on the docket of this Court.

January 21, 2014

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).